UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| UNITED STATES OF AMERICA | § | |
| --- | --- | --- |
| | § | |
| v. | § | CRIMINAL NO. 4:13-CR-200-SDJ |
| | § | |
| MARIA GUADALUPE MENDOZA | § | |
| VILLEGAS (1) | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Maria Villegas's Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A).[1] (Dkt. #1438). Having considered the motion, the record, and the applicable law, Villegas's motion for sentence reduction is **DENIED**.

### I. BACKGROUND

On July 1, 2015, Villegas was sentenced to a 420-month term of imprisonment with five years of supervised release. (Dkt. #900). She pleaded guilty to conspiracy to possess with intent to distribute heroin in violation of 21 U.S.C. § 846. (Dkt. #645 ¶ 2). As part of this conspiracy, Villegas "conspired with others to possess 90 kilograms or more of heroin with the intent to distribute that heroin to at least one other individual." (Dkt. #646 ¶ 5). About ninety-one months after sentencing, Villegas filed this motion for compassionate release, citing to (1) elevated health risks related to

---

[1] Although Defendant Villegas filed two "motions" that purport to request the Court to order the BOP or the Government to collect her rehabilitation records and medical records, (Dkt. #1439, #1440), the substance of these motions show that they do not request any relief from the Court. *See, e.g.*, (Dkt. #1439) (Defendant "respectfully submits that all her records to her documents are available with her Unit Counselor at [her location of incarceration.] [Defendant] will attempt to obtain all her documents *to provide the Court*. Petitioner submits that at times it is difficult to obtain documents from staff due to restrictions and burdens place on inmates due to the Pandemic, and or many of the time institution is understaffed and counselor are rarely available.") (emphasis added). Therefore, the Court does not construe either to be a motion seeking relief from the Court.

1

her medical conditions and potential exposure to COVID-19 during the pandemic; (2) the need to serve as the primary caregiver for her daughter; and (3) her rehabilitation while incarcerated. (Dkt. #1438 at 4). Villegas requests that the Court reduce her sentence, presumably to time served, and order her released from prison. At this time, Villegas has served less than a third of her sentence.

## II. LEGAL STANDARDS

### A. Jurisdiction over Sentence-Reduction Motions

Under the "rule of finality," "federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed." *Freeman v. United States*, 564 U.S. 522, 526, 131 S.Ct. 2685, 180 L.Ed.2d 519 (2011) (cleaned up). That is so because a judgment of conviction imposing a sentence of imprisonment "constitutes a final judgment," which may be modified in only "limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824, 130 S.Ct. 2683, 177 L.Ed.2d 271 (2010). Indeed, the Fifth Circuit has explained that "[a]bsent jurisdiction conferred by statute, district courts lack power to consider [post-judgment] claims." *United States v. Varner*, 948 F.3d 250, 253 (5th Cir. 2020) (quoting *Veldhoen v. U.S. Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)); *see also Eberhart v. United States*, 546 U.S. 12, 17, 126 S.Ct. 403, 163 L.Ed.2d 14 (2005) (per curiam) (a "basic principle of judicial process" is that "once a final [criminal] judgment is issued and the court of appeals considers a case, a district court has no power to act on it further").

The "limited circumstances" in which a defendant may invoke the district court's[2] jurisdiction are through (1) compassionate-release motions;[3] (2) motions for sentence reduction based on a change in the sentencing guidelines;[4] (3) Rule 35(a) motions to correct clear error within fourteen days of sentencing;[5] (4) Rule 35(b) motions for sentence reduction based on substantial assistance;[6] (5) Rule 36 motions to correct clerical errors;[7] (6) habeas motions;[8] or (7) any other motion "expressly permitted by statute."[9] *Varner,* 948 F.3d at 253–54. That's it. If a Defendant seeks other relief, they must identify the statute authorizing the requested relief.

**B. Motions for Compassionate Release**

Compassionate-release motions are governed by 18 U.S.C. § 3582(c)(1)(A)(i). They can be filed by either the Director of the Bureau of Prisons ("BOP") or the defendant. Under this section, the Court may "reduce the term of imprisonment" and "impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment[.]" *Id.*

---

[2] A defendant may invoke the jurisdiction of the courts of appeals through direct appeal of their term of imprisonment under 18 U.S.C. § 3742.

[3] 18 U.S.C. § 3582(c)(1)(A).

[4] 18 U.S.C. § 3582(c)(2).

[5] 18 U.S.C. § 3582(c)(1)(B); *see also* FED. R. CRIM. P. 35(a).

[6] *Id.*; *see also* FED. R. CRIM. P. 35(b).

[7] FED. R. CRIM. P. 36.

[8] 28 U.S.C. § 2255.

[9] 18 U.S.C. § 3582(c)(1)(B).

§ 3582(c)(1)(A)(i). The standard for granting relief is exacting. The court must find that (1) "'extraordinary and compelling reasons' justify a sentence reduction"; (2) such a reduction "must be consistent with applicable policy statements issued by the Sentencing Commission"; and (3) "early release would be consistent with the sentencing factors in § 3553(a)." *United States v. Clark*, No. 24-10020, 2024 WL 4930383, at *1 (5th Cir. Dec. 2, 2024).

So what constitute "extraordinary and compelling reasons"? Congress chose not to elaborate further. Instead, it delegated the authority to do so to the Sentencing Commission. *See* 28 U.S.C. § 994(t) (directing the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"). In so doing, Congress "provided just one restriction: 'Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.'" *United States v. Shkambi*, 993 F.3d 388, 391 (5th Cir. 2021) (quoting 28 U.S.C. § 994(t)).

Under this authority, the Sentencing Commission promulgated U.S.S.G. § 1B1.13. As it stands now, there are six "extraordinary and compelling reasons" that could warrant sentence reduction: (1) the defendant's medical circumstances; (2) the defendant's age; (3) the defendant's family circumstances; (4) whether the defendant is a victim of abuse; (5) other reasons that are "similar in gravity" to reasons one through four; and (6) whether the defendant has an unusually long sentence. U.S.S.G. § 1B1.13(b)(1)–(6). This section binds district courts because Section 3582 requires

sentence reductions to be "consistent with applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A)(i); *see also United States v. Garcia*, 655 F.3d 426, 435 (5th Cir. 2011) (finding that Congress intended the Sentencing Commission's policy statements "to be binding in § 3582(c) proceedings"). And the 2023 amendments[10] made clear that U.S.S.G. § 1B1.13 applies to motions filed by either "the Director of the [BOP] or the defendant."[11] U.S.S.G. § 1B1.13(a); *see also United States v. Jean*, 108 F.4th 275, 290 (5th Cir. 2024) (noting that "district courts are now guided by the November 1, 2023 Amendments in future cases"), *abrogated on other grounds by United States v. Austin*, No. 24-30039, 2025 WL 78706, at *3 (5th Cir. Jan. 13, 2025).

But the analysis doesn't end there. Even if the defendant shows extraordinary and compelling reasons for granting relief, several other hurdles remain. For example, the court must find that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(2). The factors under Section 3142(g) align with the sentencing factors under 18 U.S.C. § 3553(a),[12] which must also be considered by the court:

---

[10] Amendments to the Sent'g Guidelines (U.S. Sent'g Comm'n Nov. 1, 2023).

[11] Before the 2023 amendments to the Sentencing Guidelines, U.S.S.G. § 1B1.13(a) was limited to motions "of the Director of the [BOP]." The Fifth Circuit, among many others, interpreted this omission to suggest that U.S.S.G. § 1B1.13 did not apply to compassionate-release motions filed by defendants. *United States v. Shkambi*, 993 F.3d 388, 392–93 (5th Cir. 2021); *see also United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam); *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020); *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020). The amended guidelines allow for motions "of the Director of the [BOP] *or the defendant*," which clarified this previous confusion.

[12] For brevity, the Court includes the language of only 18 U.S.C. § 3553(a), which is substantively identical to 18 U.S.C. § 3142(g).

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a). The district court has broad discretion in considering these factors. As the Supreme Court has explained, "the 'sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case[.]'" *United States v. Rollins*, 53 F.4th 353, 359 (5th Cir. 2022) (quoting *Gall v. United States*, 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007)). Consistent with the broad discretion granted district courts, the Fifth Circuit has "regularly affirmed the denial of a compassionate-release motion … where the district court's weighing of the Section 3553(a) factors can independently support its judgment." *Id.* at 358 (citation omitted). In short, "compassionate release is discretionary, not mandatory, and could be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020).

Based on her arguments, Villegas relies on her medical conditions and family circumstances as extraordinary and compelling reasons for her release.

### i. Defendant's medical circumstances (U.S.S.G. § 1B1.13(b)(1))

The Sentencing Commission has enumerated four separate medical circumstances to consider in evaluating a compassionate-release request. U.S.S.G. § 1B1.13(b)(1)(A)–(D).

First, whether the Defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory)." *Id.* § 1B1.13(b)(1)(A). Although a life-expectancy prognosis is not required, the provided examples make clear how serious the illness must be: "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* Fifth Circuit precedent is in accord. *See, e.g.*, *United States v. McMaryion,* No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023) (per curiam) ("We have said that a late-stage, terminal prognosis can constitute an extraordinary and compelling basis for a § 3582(c)(1) motion."). Generic conditions like hypertension or high cholesterol are insufficient. *See, e.g.*, *United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021) (finding neither hypertension nor high cholesterol to be terminal conditions); *United States v. Koons*, 455 F.Supp.3d 285, 292–93 (W.D. La. 2020) (similar, but for high cholesterol, hypertension, and acid reflux).

Second, whether the defendant is "(i) suffering from a serious physical or medical condition, (ii) suffering from a serious functional or cognitive impairment, or (iii) experiencing deteriorating physical or mental health because of the aging process." U.S.S.G. § 1B1.13(b)(1)(B). This condition must be so severe that it "substantially diminishes the ability of the defendant to provide self-care within the

7

environment of a correctional facility and from which he or she is not expected to recover." *Id.* When the defendant's conditions are "'managed effectively by medication' and do not 'substantially diminish the ability of the defendant to provide self-care,'" the defendant's medical condition is not an "extraordinary and compelling reason[] warranting compassionate release[.]" *United States v. Love*, 853 F.App'x 986, 987 (5th Cir. 2021) (quotations omitted).

Third, whether the Defendant is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). This subcategory focuses on the lack of resources and medical care available in some correctional facilities. Courts have rejected as insufficient general complaints about long-term issues without medical proof of the condition or how it is deteriorating. *See, e.g.*, *United States v. Ani*, No. 21-00147, 2024 WL 50775, at *4 (D. Haw. Jan. 4, 2024) ("BOP is providing him with medical care, such as medication. There is no evidence that his medical conditions are deteriorating; that his medical conditions require long-term or specialized medical care that is not being provided and without which he is at risk of serious deterioration in health or death; or that his ability to care for himself has been seriously diminished."); *United States v. Dessaure-Outlaw*, No. CR 122-023, 2024 WL 83327, at *2 (S.D. Ga. Jan. 8, 2024) (finding general complaints about surgery complication and diabetes insufficient).

Fourth, whether the defendant is in a facility that is "at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public

8

health emergency declared by the appropriate federal, state, or local authority." U.S.S.G. § 1B1.13(b)(1)(D)(i). In addition, the defendant's "personal health risk factors and custodial status," must put them "at increased risk of suffering severe medical complications or death[.]" *Id.* § 1B1.13(b)(1)(D)(ii). The facility must also be unable to "adequately mitigate[]" the defendant's increased risk "in a timely manner." *Id.* § 1B1.13(b)(1)(D)(iii).

Courts have consistently denied motions related to the COVID-19 pandemic under this section.[13] In fact, the Fifth Circuit has "repeatedly denied relief in cases where prisoners sought compassionate release due to fear of communicable disease, even when those prisoners were in poor health." *McMaryion*, 2023 WL 4118015, at *2 (citing *Thompson*, 984 F.3d at 432–34 (5th Cir. 2021) (denying relief to a hypertensive stroke survivor concerned by COVID-19); also citing *United States v. Rodriguez*, 27 F.4th 1097, 1098–1100 (5th Cir. 2022) (denying relief where COVID-19-fearing movant suffered from heart failure)). Indeed, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]" *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see also Koons,* 455 F.Supp.3d at 290) ("[A] prisoner cannot satisfy

---

[13] *See, e.g.*, *United States v. Blair*, No. 5:19-CR-50058, 2023 WL 8223470, at *3 (W.D. Ark. Nov. 6, 2023) (finding the mere risk of COVID-19 infection was too speculative to serve as an extraordinary and compelling medical circumstance); *United States v. Williams*, No. GLR-97-355, 2023 WL 8019023, at *4 (D. M.D. Nov. 20, 2023) ("Hypertension and high BMI were not sufficient to warrant a prisoner's relief when the BOP facility's COVID-19 numbers were low, and the inmate did not show that he would not receive appropriate treatment if he were to contract the virus.").

his burden of proof by simply citing to nationwide COVID-19 statistics, asserting generalized statements on conditions of confinement within the BOP.").

Further, the increased risk from an outbreak or emergency must exist at the time relief would be granted. The Sentencing Commission drafted this section using words that convey the necessary, continuous nature of the risk—"at imminent risk of being affected," "ongoing outbreak," "ongoing public health emergency," "increased risk of suffering." U.S.S.G. § 1B1.13(b)(1)(D). As applied to COVID-19, this is no longer the case: Both international and domestic health authorities, including the World Health Organization,[14] the United States Centers for Disease Control and Prevention,[15] and the U.S. Federal Government,[16] have made clear that the COVID-19 pandemic has ended.[17] Thus, the COVID-19 pandemic no longer constitutes an "extraordinary and compelling reason" for compassionate release.

---

[14] *Statement on the Fifteenth Meeting of the IHR (2005) Emergency Committee on the COVID-19 Pandemic*, WORLD HEALTH ORG. (May 5, 2023), https://www.who.int/news/item/05-05-2023-statement-on-the-fifteenth-meeting-of-the-international-health-regulations-(2005)-emergency-committee-regarding-the-coronavirus-disease-(covid-19)-pandemic [https://perma.cc/MR64-X7UV].

[15] *End of the Federal COVID-19 Public Health Emergency (PHE) Declaration*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 5, 2023), https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html#:~:text=The%20federal%20COVID-19%20PHE,share%20certain%20data%20will%20change [https://perma.cc/3S43-2VNT].

[16] *See* National Emergencies Act, PL 118-3, April 10, 2023, 137 Stat 6.

[17] *See also United States v. Ford*, No. 1:16-CR-19, 2023 WL 3477168, at *5 (N.D. Ind. May 15, 2023) (noting that "on May 11, 2023, the federal government ended the COVID-19 Public Health Emergency based on widespread prevention and control measures like vaccination." (quotations omitted)).

10

### ii. Defendant's family circumstances (U.S.S.G. § 1B1.13(b)(3))

The Sentencing Commission enumerates four potential reasons for a defendant's family circumstances to constitute an extraordinary and compelling reason for release:

> (A) The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.
>
> (B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.
>
> (D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, "*immediate family member*" refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

U.S.S.G. § 1B1.13(b)(3)(A)–(D).

Conclusory assertions that the defendant must now serve as the primary caretaker for a family member are insufficient. *See, e.g.*, *United States v. Newman*, No. CR 122-031, 2024 WL 812041, at *2 (S.D. Ga. Feb. 27, 2024) (finding unsupported assertions that defendant's wife was disabled and that his father required caretaking were "conclusory statements" that were "insufficient to carry his burden of persuasion"). Rather, courts require specific evidence of the defendant's need to serve as a primary caretaker. For example, the defendant must prove with medical support that the family member is incapacitated. *See United States v. Zermeno*, No. 1:16-CR-

79(1), 2024 WL 4043445, at *4 (E.D. Tex. Sept. 3, 2024) (collecting cases); *United States v. Romano*, 707 F.Supp.3d 233, 237–38 (E.D.N.Y. 2023) (finding that "[w]ithout medical evidence" of the "father's incapacitation and medical evidence detailing [defendant's] mother's inability to provide his father the necessary assistance, the Court cannot conclude that [the mother] would be an inadequate caregiver"). Statements that a family member is elderly and needs care are insufficient. *Id.* The defendant must also demonstrate why they are the only available caregiver for that family member. *United States v. Lopez,* No. 23-50404, 2024 WL 244935, at *1 (5th Cir. Jan. 23, 2024) (noting that the defendant "failed to explain why his other siblings could not care for his parents"). And there must be a reason for the change in that family member's caretaker status. *Id.* (noting the defendant's failure to "allege the death or incapacitation of any current caretaker").

When the caretaking role relates to minors like children, additional requirements apply. For instance, the defendant must show that they would likely gain custody of the child if released. *See, e.g.*, *Zermeno*, 2024 WL 4043445, at *5 (collecting cases). In such a situation, the court should evaluate whether "release of the inmate to care for the inmate's child is the best interest of the child." U.S. Dep't of Just., Fed. Bureau of Prisons, Program Statement 5050.50 (Jan. 17, 2019)).

**C. Exhaustion Requirement Under 18 U.S.C. § 3582(c)(1)(A)**

Section 3582(c)(1)(A) imposes exhaustion requirements for compassionate-release requests from a defendant: they must "fully exhaust[] all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or

the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" Although this requirement is mandatory, the Fifth Circuit has treated it as "a nonjurisdictional claim-processing rule." *United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020), *cert. denied*, 141 S.Ct. 920 (2020). And "mandatory but nonjurisdictional procedural filing requirements may be waived." *United States v. McLean*, Nos. 21-40015, 21-40017, 2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022). Thus, if the Government fails to "invoke § 3582(c)(1)(A)'s exhaustion requirement as a basis for denying relief," that argument is deemed waived. *Id.*

### III. DISCUSSION

To begin with, the Court addresses exhaustion. Defendant Villegas claims that she submitted a request for compassionate release to the warden, who did not respond to her request. (Dkt. #1438 at 2). She attaches no proof to show that she made this request. That said, Villegas's requirement to prove exhaustion may be waived by the Government if it fails to raise this argument in response. *McLean*, 2022 WL 44618, at *1. Because the Government did not respond to Villegas's motion, let alone raise this argument in response to it, that argument is deemed waived. Villegas is therefore presumed to have exhausted her administrative remedies.

Turning to Villegas's motion, she provides three reasons in support of her request for compassionate release: her medical circumstances (U.S.S.G. § 1B1.13(b)(1)(D)(i)), her family circumstances (U.S.S.G. § 1B1.13(b)(3)), and her rehabilitation efforts. The Court begins with Villegas's medical circumstances.

Villegas claims that she has "minimal medical issues," which appear to include that she has a BMI over 30 and that she is a former cigarette smoker. (Dkt. #1438 at 5–6). But the Fifth Circuit has repeatedly denied similar motions citing more serious health concerns and the COVID-19 pandemic. *See, e.g.*, *Thompson*, 984 F.3d at 432–34 (denying relief to a hypertensive stroke survivor concerned by COVID-19); *Rodriguez*, 27 F.4th at 1098–1100 (denying relief where COVID-19-fearing movant suffered from heart failure). Even if that weren't the case, the COVID-19 pandemic has ended and no longer constitutes an extraordinary and compelling reason for compassionate release. *See supra* notes 14–17 and accompanying text. Villegas has thus failed to prove that her medical circumstances are extraordinary or compelling.

As to Villegas's family circumstances, she suggests that she needs to serve as the primary caregiver for her daughter because her mom "needs assistance and is unable to care for [her] daughter on her own." (Dkt. #1438 at 3). Nowhere does Villegas explain how her mom is incapacitated, as required by Section 1B1.13(b)(3)(A). Nor does Villegas provide any support to show why her mother cannot provide the requisite care for her daughter.

And assuming that her daughter is a minor, Villegas also needed to show that she would likely gain custody of her daughter if released. *Zermeno*, 2024 WL 4043445, at *5 (collecting cases). But if released, Villegas will be deported. (Dkt. #1438 at 2) (noting that she is subject to an order of deportation or an ICE detainer). Thus, the Court has no reason to think, and Villegas has provided nothing to support, that she would be granted custody if released.

14

Finally, because Villegas's family and medical circumstances are neither extraordinary nor compelling, her rehabilitation efforts also fall short: "Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Shkambi*, 993 F.3d at. 391.

Setting the sentencing guidelines aside, the Court independently finds that the sentencing factors under 18 U.S.C. § 3553(a) support denying Villegas's motion. *Rollins*, 53 F.4th at 359. Villegas "conspired with others to possess 90 kilograms or more of heroin with the intent to distribute that heroin to at least one other individual." (Dkt. #646 ¶ 5). Her Presentence Report calculated a guideline range of imprisonment for life. (Dkt. #848 ¶ 49). Villegas's offense mandates a ten-year-minimum sentence, which reflects the seriousness of the crime and deters future criminal conduct. Villegas asks the Court to release her notwithstanding the statutory minimum sentence and when she has served less than a third of the sentence imposed by this Court. Granting Villegas's request would not reflect the seriousness of her offense, promote respect for the law, or provide just punishment for her offense. Nor would it adequately deter future criminal conduct or protect the public.

The severity of her punishment is further substantiated by Judge Crone's findings in her Statement of Reasons:

> The court finds this to be a reasonable sentence in view of the nature and circumstances of the offense [including] . . . her serving as a source of supply of heroin for the organization and then being in charge of the distribution operation and shipping of drug proceeds in the Dallas area upon the arrest of a codefendant, the discovery of heroin, more than $71,000 in currency, and drug ledgers during a search of her residence,

15

> her leadership role in the organization, *her participation in a murder for hire plot by making a down payment of $12,500 to a hit man*, her prior conviction for theft, and her illegal presence in the United States. It will serve as just punishment, promote respect for the law, and deter future violations of the law.

(Dkt. #901 at 4) (emphasis added). Defendant's significant role in trafficking heroin and participation in a murder-for-hire plot amply demonstrate that she presents a substantial danger to the public.

In short, Because Villegas has failed to show that there are extraordinary and compelling reasons to reduce her sentence, her motion must be denied. Even if Villegas had made this showing, the Court would still find that her motion must be denied "after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *Chambliss*, 948 F.3d at 693.

## IV. CONCLUSION

Defendants seeking compassionate release must show that (1) extraordinary and compelling reasons warrant a sentence reduction; (2) a reduction would be consistent with the applicable policy statements of the Sentencing Commission; and (3) a sentence reduction is warranted after consideration of the sentencing factors in 18 U.S.C. § 3553(a). Defendant Maria Villegas has failed to meet her burden for each requirement, and her Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A), (Dkt. #1438), is therefore **DENIED**.

**So ORDERED and SIGNED this 30th day of January, 2025.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE